UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD C.,[1] | ) | CIVIL ACTION NO. 4:23-CV-922 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MICHELLE KING,[2] | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

Richard C. is an adult who lives in the Middle District of Pennsylvania. He seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before the undersigned Magistrate Judge upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that federal courts refer to social security plaintiffs by their first name and last initial. We adopt this recommendation.

[2] Michelle King was named Acting Commissioner of Social Security in January 2025. She is automatically substituted as the defendant, and no further action need be taken to continue this lawsuit. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

Procedure. (Doc. 7). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On November 24, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 29; Doc. 9-2, p. 30).  In this application, Plaintiff alleged he became disabled on May 25, 2019, when he was forty-nine years old, due to the following conditions: injury to discs at L3 and L4; spinal fusion; S1 joint fused; non-insulin dependent diabetic; spinal fusion of L3, L4, L5, and S1. (Admin. Tr. 29, 36; Doc. 9-2, p. 30, 37); (Admin. Tr. 302; Doc. 9-6, p. 13). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk sit, kneel, and climb stairs. (Admin. Tr. 316; Doc. 9-6, p. 27). Plaintiff graduated high school and earned an associate degree. (Admin. Tr. 303; Doc. 9-6, p. 14). Before the onset of his impairments, Plaintiff worked as a nurse in a state prison. (Admin. Tr. 36, 48; Doc. 9-2, pp. 37, 49).

On February 19, 2021, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 29; Doc. 9-2, p. 30). On May 13, 2021, Plaintiff's

application was denied on reconsideration. *Id.* On June 9, 2021, Plaintiff requested an administrative hearing. *Id.*

On December 9, 2021, Plaintiff and his counsel participated in a telephone hearing before Administrative Law Judge Elizabeth Ebner (the "ALJ"). (Admin. Tr. 29; Doc. 9-2, p. 30). A vocational expert ("VE") also testified during the proceedings. On January 27, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 37; Doc. 9-2, p. 38). On February 11, 2022, Plaintiff asked the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") to review the ALJ's decision. (Admin. Tr. 226; Doc. 9-4, p. 117). Along with his request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 2, 8-21; Doc. 9-2, pp. 1, 9-22).

On April 3, 2023, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 9-2, p. 2).

On June 6, 2023, Plaintiff lodged a complaint requesting judicial review of the ALJ's decision. (Doc. 1).[3] In the complaint, Plaintiff alleges that the ALJ's decision denying his application is "not supported by substantial evidence and is

---

[3] The ALJ's January 2022 decision is the final administrative decision subject to review under 42 U.S.C. § 405(g).

contrary to the law and regulation." (Doc. 1, ¶ 10). As relief, Plaintiff requests that the court reverse the Commissioner's final decision and award benefits to Plaintiff, remand this case for further proceedings, or grant such other relief as the Court deems just and proper. (Doc. 1, p. 2).

On August 7, 2023, the Commissioner filed an answer. (Doc. 8). In her answer, the Commissioner states that "the decision holding that Plaintiff is not entitled to disability insurance benefits is correct and in accordance with the law and regulations" and that "the Commissioner's findings of fact are supported by substantial evidence." (Doc. 8, ¶ 9). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 9).

Plaintiff's Brief (Doc. 10) and the Commissioner's Brief (Doc. 12) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

## III.  LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

## A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[4] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[6] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[7] In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[8] When determining if the Commissioner's decision is supported by substantial evidence,

---

[4] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[5] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[6] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

the court may consider any evidence that was in the record that was made before the

ALJ.[9]

The Supreme Court has underscored the limited scope of district court review

in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the

---

[9] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

substantial-evidence standard to the deferential clearly-erroneous standard).[10]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[11] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[12]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[10] *Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019).

[11] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[12] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[13]

**B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[14] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant

---

[13] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[14] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[15] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).
[16] 20 C.F.R. § 404.1520(a).

is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

---

[17] 20 C.F.R. § 404.1520(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[19] 20 C.F.R. § 404.1545(a)(2).

[20] 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[21] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   "The ALJ Erred in Relying Upon the VE's testimony About the Occupation of a 'Tanning Salon Attendant[.]'" (Doc. 10, p. 2).

(2)   "The Administrative Law Judge (ALJ) Erred in His Evaluation by Not Adequately Addressing and Incorporating the Claimant's Need to Alternate Sitting and Standing at Will[.]" *Id.*

Before turning to the merits of Plaintiff's arguments, we will summarize the ALJ's findings in her decision.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her January 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2024. (Admin. Tr. 31; Doc. 9-2, p. 32). Then, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 25, 2019 (Plaintiff's alleged onset date) and January 27, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 31; Doc. 9-2, p. 32).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease, degenerative joint disease, and obesity. *Id.* The ALJ also found that Plaintiff suffered

from diabetes but concluded that this impairment was non-severe. (Admin. Tr. 32; Doc. 9-2 p. 33).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

> he can stand and/or walk four hours. He can never climb ladders, ropes, or scaffolds. He can have no exposure to unprotected heights or dangerous, moving, mechanical parts. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He can have occasional exposure to vibration and extreme cold.

(Admin. Tr. 32; Doc. 9-2, p. 33).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 36; Doc. 9-2, p. 37).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 36-37; Doc. 9-2, pp. 37-38). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's

administrative hearing and cited the following three (3) occupations: (1) ticket seller, DOT code 211. 467-030; (2) office helper, DOT code 239.567-010; and (3) tanning salon attendant, DOT code 359.567-014. (Admin. Tr. 37; Doc. 9-2, p. 38).

### B. WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION AT STEP FIVE WHERE THERE IS AN UNRESOLVED CONFLICT AS TO ONE OCCUPATION

At step five, an ALJ determines whether the claimant can adjust to other work considering their residual functional capacity, age, education, and work experience.[22] The Commissioner bears the burden of proof at this step.[23] "Advisory testimony from a vocational expert is often sought by the ALJ for that purpose."[24] Such testimony "typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert."[25] "At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one [occupation] that exists in significant numbers in the national economy."[26] "There is no precise estimate for what constitutes 'significant numbers' of jobs under the

---

[22] 20 C.F.R. § 404.150(a)(4)(v).

[23] 20 C.F.R. § 404.1512.

[24] *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005) (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)).

[25] *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

[26] *Penrose v. Comm'r of Soc. Sec.*, No. 1:20-CV-00011-NLH, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020).

Social Security Act."[27] In this Circuit, the Court of Appeals has found that as few as 200 jobs in the regional economy was sufficient for these purposes.[28] !

Here, the ALJ relied on the VE's response to a hypothetical question to meet her burden. In that response, the VE identified the following three occupations that Plaintiff could perform and provided statistical data about the available jobs for each occupation: (1) Ticket Seller, DOT code 211. 467-030 with 60,000 jobs in the national economy; (2) Office helper, DOT code 239.567-010, with 45,000 jobs in the national economy; and (3) Tanning salon attendant, DOT code 359.567-014, with 19,000 jobs in the national economy. (Admin. Tr. 37; Doc. 9-2, p. 38).

Plaintiff argues that the ALJ did not meet her burden at step five of demonstrating Plaintiff could adjust to other work that exists in significant number in the national economy because one occupation identified by the VE, and cited by the ALJ, does not exist. (Doc. 10, p. 5). He argues that the ALJ cannot rely on this occupation because "any discrepancy between a vocational expert's testimony and the DOT must be addressed by the ALJ before using that testimony for disability

---

[27] *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013).

[28] *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987); *see also Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("[W]e conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy.").

determination.[29] We construe this as an argument that there was an apparent or obvious conflict between the VE's testimony and the DOT as to the tanning salon attendant occupation which the ALJ was required to, but did not, resolve pursuant to SSR 00-4p. Plaintiff cites to several cases where courts have acknowledged that it is not clear whether the occupation of tanning salon attendant is classified under any DOT listing.[30] In the cases Plaintiff cites, the courts reached different conclusions as to whether the entry for tanning salon attendant conflicts with the

---

[29] (Doc. 10, p. 5) (citing *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (holding that SSR 00-4p does not require an ALJ to inquire further about potential conflicts between VE testimony and the DOT unless those conflicts are apparent or obvious) and *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (same)).

[30] *Id.* (citing *Terry T. v. Saul*, No. 19-CV-0684, 2021 U.S. Dist. LEXIS 49123 (N.D. Ok. Mar. 16, 2021) (observing that the DOT does not have a stand-alone definition for tanning salon attendant and does not have an entry that corresponds with code 359.567-014); *James S. v. Comm'r of SSA*, No. 3:18-CV-00394, 2019 U.S. Dist. LEXIS 155659 (D. Or. Sept. 11, 2019) (noting that it is unclear whether tanning salon attendant is classified in the DOT and citing to cases acknowledging that the occupation has been assigned DOT code 359.567-014 on the U.S. Department of Labor's O*Net Online Service); *Grady v. Colvin*, No. 4:14-CV-1893, 2016 U.S. Dist. LEXIS 20925 (E.D. Mo. Feb. 22, 2016) (finding that, according to O*Net, the occupation of tanning salon attendant has been assigned DOT code 359.567-014); *Sievers v. Berryhill*, 734 F. App'x 467 (9th Cir. 2018) (observing that the ALJ misidentified the listing for tanning salon attendant as 359.567-014)).

DOT.[31] They also reached different conclusions as to whether the error required remand.[32]

In response, the Commissioner argues that, even assuming the ALJ failed to resolve an apparent or obvious conflict between the VE's testimony about the tanning salon attendant occupation and the DOT, this error is harmless because the ALJ relied on two other occupations, and those two occupations together support the ALJ's conclusion that Plaintiff can perform a significant number of jobs that exist in the national economy despite his impairments.[33]

---

[31] *Terry T.*, 2021 U.S. Dist. LEXIS (finding that the VE's testimony cannot possibly be consistent with the DOT); *James S.*, 2019 U.S. Dist. LEXIS 155659 (finding that the ALJ was required to seek clarification from the VE about the tanning salon attendant occupation); *Grady*, 2016 U.S. Dist. LEXIS 20925 (finding that there was no conflict between the VE's testimony and the DOT); *Sievers*, 734 F. App'x 467 (not making any finding about whether a conflict existed).

[32] *Terry T.*, 2021 U.S. Dist. LEXIS 49123 (finding that remand was required because the determination as to numerical significance at step five should be left to the ALJ); *James S.*, 2019 U.S. Dist. LEXIS 155659 (remanding because the ALJ erred at steps two and five because the ALJ found the claimant's hearing impairment non-severe, omitted the claimant's hearing limitations from the hypothetical question, and failed to seek clarification from the VE about the tanning salon attendant occupation); *Grady*, 2016 U.S. Dist. LEXIS 20925 (finding that the VE's testimony about the tanning salon attendant occupation was reliable); *Sievers*, 734 F. App'x 467 (finding the misidentification of the tanning salon attendant position was harmless error because the VE identified, and the ALJ relied on, two other DOT listings).

[33] (Doc. 12, pp. 12-13) (citing *Craigie*, 835 F.2d at 58 (finding VE testimony that there are 200 jobs in the regional economy that a claimant can perform in his region is a clear indication that he could perform a significant number of jobs in the national economy)).

Although the Third Circuit has expressed concern where there are significant conflicts between the VE's testimony and the DOT, it has not adopted a general rule that an unresolved conflict between a VE's testimony and the DOT necessarily requires reversal.[34] For example, in *Jones v. Barnhart*, the Third Circuit held that substantial evidence supported the ALJ's conclusion at step five despite inconsistencies between the DOT and VE testimony as to the strength classification of one of the three occupations the VE identified. The Circuit reached a similar conclusion in *Rutherford v. Barnhart* and affirmed an ALJ's decision despite a "minor inconsistency" between the VE's testimony and the DOT.[35] In *Zirnsak v. Colvin*, the Third Circuit found that substantial evidence supported an ALJ's decision despite his failure to comply with the requirements of SSR 00-4p because substantial evidence supported the claimant's ability to perform three other widely

---

[34] *Jones*, 364 F.3d at 506 n.6 (citing *Boone v. Barnhart*, 353 F.3d 203 (3d Cir. 2003)).

[35] *Rutherford*, 399 F.3d at 558 ("As for the other instances of claimed inconsistency, which relate to two jobs identified by the expert with specified vocational preparation classifications that render them beyond the ALJ's limitation to unskilled work, they are simply not egregious enough—either in number or substance—to bring into question the ALJ's reliance on the expert testimony as a whole. Therefore, although some minor inconsistencies may exist between the vocational testimony and the DOT information, we conclude that the testimony provided substantial evidence for the ALJ's conclusions.").

available occupations in the national economy.[36] Therefore, we agree with the Commissioner that even if the ALJ is prohibited from relying on the occupation of tanning salon attendant because she failed to resolve an obvious conflict between the VE's testimony and the DOT, substantial evidence supports Plaintiff's ability to perform the remaining two occupations of ticket seller and office helper. These two occupations amount to approximately 105,000 jobs nationally. Although there is no precise definition of what amount to a "significant number" of jobs in the national economy, Courts have affirmed decisions supported by more modest numbers.[37] Because there is substantial evidence in the record to support the ALJ's finding, the ALJ's reliance on the tanning salon attendant occupation does not warrant remand in this case.

### C.    WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION TO EXCLUDE A SIT/STAND OPTION FROM THE RFC ASSESSMENT AND VE HYPOTHETICAL

Plaintiff argues that none of the occupations the ALJ cited can form the basis of a substantial evidence determination in this case because the VE's testimony was

---

[36] *Zirnsak*, 777 F.3d at 619-20 (finding that an ALJ's failure to elicit a reasonable explanation to resolve a conflict as to the strength level required to perform one occupation did not warrant remand where three other occupations widely available occupations were also cited).

[37] *Penrose*, 2020 WL 7640585, at *7 (finding that one occupation that amounted to 41,121 jobs in the national economy was a significant number).

based on responses to a hypothetical question that did not adequately represent his physical limitations. Specifically, he argues that substantial evidence does not support the ALJ's conclusion because it is based on testimony that did not recognize Plaintiff would be limited to occupations where he could shift position at will.[38] Although framed as a challenge to the adequacy of the ALJ's hypothetical question, Plaintiff's argument boils down to an attack on the RFC assessment itself.[39]

A claimant's RFC is the most that he can do despite his limitations.[40] At the administrative hearing level, the ALJ is charged with determining the claimant's RFC.[41] Substantial evidence supports an ALJ's RFC assessment where it

---

[38] When identifying other jobs in the national economy that a person with Plaintiff's characteristics could perform, the VE stated:

> ***Taking a look at light jobs, Your Honor, but only with a sit/stand option***. There is ticket seller, DOT code 211.467-030, it has an SVP of 2, making it unskilled, generally performed at the light exertional level, there are 60,000 in the national economy. Office helper, DOT code 239.567-010, it has an SVP of 2, making it unskilled, it's generally performed at the light exertional level, there are 45,000 in the national economy. A tanning salon attendant, DOT code 359.567-014, it has an SVP of 2, making it unskilled, generally performed at the light exertional level, and there are 19,000 in the national economy.

(Admin. Tr. 61; Doc. 9-2, p. 62) (emphasis added). It appears that a sit/stand option may have been incorporated in the VE's response despite being omitted from the ALJ's question. Even if this is not the case, however, substantial evidence supports the ALJ's finding to exclude this limitation.

[39] *Rutherford*, 399 F.3d at 554 n.8.

[40] 20 C.F.R. § 404.1545(a)(1).

[41] 20 C.F.R. § 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency

incorporates all credibly established limitations, is based on consideration of all available evidence, and is explained adequately enough to permit judicial review.[42] "[L]imitations that are supported by medical evidence and are 'otherwise uncontroverted in the record'" are "credibly established" and therefore *must* be included in the ALJ's hypothetical.[43] However,

> [W]here a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical. [*Rutherford*, 399 F.3d at 554]. This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason. *Id.* Finally, the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible. *Id.*

Plaintiff's assertion that he requires the accommodation of shifting positions "at will" falls into the second category of the framework described above. It was in the ALJ's discretion to decide the length of time Plaintiff could stand and/or walk at

---

consultants—must make the ultimate disability and RFC determinations.") (citations omitted).

[42] *Rutherford*, 399 F.3d at 554 (observing that an ALJ is not required to submit every limitation a claimant alleges to the vocational expert, and instead must "accurately convey to the vocational expert all of a claimant's *credibly established limitations*."); *Plummer*, 186 F.3d at 429 (observing that the ALJ must consider all the evidence); and *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason . . ., an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

[43] *Zirnsak*, 777 F.3d at 614.

one time. Plaintiff argues that substantial evidence does not support ALJ's factual finding that Plaintiff did not require additional limitations to the length of time Plaintiff could stand and/or walk before changing positions because she did not review the evidence "holistically." (Doc. 10, p. 8). He also cites to specific evidence that supports his position that he can only stand for four hours total if he is permitted to shift positions at will. (Doc. 10, p. 7).

The Court may review the ALJ's finding that Plaintiff could stand for four hours per eight-hour workday without shifting positions and determine whether substantial evidence supports it.[44] The presence of evidence in the record that supports a contrary conclusion, standing alone, does not undermine the Commissioner's decision so long as the record provides substantial support for that decision.[45] "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record."[46]

---

[44] 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").

[45] *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 955 (3d Cir. 2006) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("The fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by substantial evidence." (internal footnotes and citations omitted)).

[46] *Cotter*, 642 F.2d at 706.

The relevant period in this case begins on May 25, 2019 and ends on January 27, 2022. During this period, Plaintiff developed conditions that caused back pain (degenerative disc disease), right SI joint pain (sacroiliitis, resolved with surgery), left SI joint pain (sacroiliitis, received injections), right knee pain (mild ACL sprain), and left knee pain (meniscal tear and hamstring tendonitis). Notably, three of these conditions required surgical repair.[47] These records show a pattern. When Plaintiff experienced symptoms he sought treatment. The treatment Plaintiff received escalated if conservative measures did not alleviate his pain. In most cases, however, the treatment provided relief. His relief, however, was at times only short-lived before a new condition causing similar walking and standing limitations would develop.

In May 2019, Plaintiff could no longer work due to his back pain. One month later, Plaintiff had a fusion and decompression surgery. Plaintiff's physical activity was restricted while he recovered. (Admin. Tr. 635-648, 699-701; Doc. 9-7, pp. 268-

---

[47] On June 14, 2019, Plaintiff underwent L3-S1 lumbar decompression and fusion surgery. (Admin. Tr. 33; Doc. 9-2, p. 34); (Admin. Tr. 922; Doc. 9-7, p. 555). Eight months later, on February 7, 2020, Plaintiff had a right SI joint fusion surgery. *Id.*; (Admin. Tr. 864; Doc. 9-7, p. 497). On April 15, 2021, Plaintiff had arthroscopic surgery on his left knee to repair meniscal tears. *Id.*; (Admin. Tr. 1071; Doc. 9-8, p. 61).

82, 332-334). Six weeks after surgery, he reported that the intensity of his pain was 2/10 and he was walking regularly.

Approximately twelve weeks after his back surgery, in September 2019, Plaintiff began to experience intermittent pain radiating down his right leg. This new pain worsened over time, became unbearable, and was eventually diagnosed as a new condition—sacroiliitis affecting his right hip. (Admin. Tr. 677-78, 684-85, 686-88, 690-91; Doc. 9-7, pp. 310-311, 317-318, 319-321, 323-324). In a September 2019 record Plaintiff reported that, despite his pain, he could "walk all day long without having any increase of symptoms." (Admin. Tr. 690; Doc. 9-7, p. 324). The record provides no context as to what he meant when he said he could walk all day long. Taking it at face value, however, it is seemingly at odds with physical therapy records from September, October, and November 2019 that suggest that Plaintiff was able to walk only one eighth of a mile without pain and stand for ten minutes without pain. (Admin. Tr. 377, 404, 428; Doc. 9-7, pp. 10, 37, 61). In December 2019, Plaintiff reported that his pain prevented him from walking more than half a mile, sitting more than thirty minutes, or standing more than thirty minutes. (Admin. Tr. 528; Doc. 9-7, p. 161). Injections provided temporary relief of Plaintiff's sacroiliac pain, and in February 2020 Plaintiff's right-side sacroiliitis was addressed

surgically. (Admin. Tr. 672-673; Doc. 9-7, pp. 305-306). Plaintiff's physical activity was restricted while he recovered.

Twelve weeks after the second surgery, in May 2020, Plaintiff's surgeon found that Plaintiff could return to work, subject to the following permanent restrictions: no lifting over 25 pounds; avoid repetitive bending and twisting; and frequent changes of position. (Admin. Tr. 634; Doc. 9-7, p. 267). Plaintiff reported that his back pain was exacerbated by "excessive activity," but Plaintiff reported he was walking on a regular basis. (Admin. Tr. 666; Doc. 9-7, p. 644). The treatment record does not, however, describe what level of activity is "excessive" or how far Plaintiff was walking. In August 2020 Plaintiff reported that his pain did not prevent him from walking any distance, but that he was unable to sit for more than thirty minutes and unable to stand for more than thirty minutes. (Admin. Tr. 544; Doc. 9-7, p. 177). In August 2020, October 2020, and February 2021, Plaintiff reported stiffness but minimal pain. (Admin. Tr. 659, 662; Doc. 9-7, pp. 292, 295); (Admin. Tr. 1116-1118; Doc. 9-8, pp. 106-08). These reports are echoed in statements recorded in chiropractic records from January 2021 and November 2021. In these chiropractic records Plaintiff rated the intensity of his back and sacroiliac pain as 2/10 or 3/10. (Admin. Tr. 993-1011; Doc. 9-7, pp. 627-644).

As his back and sacroiliac pain became more controlled, Plaintiff developed left knee pain. He was observed walking with an antalgic gait, was diagnosed with a meniscal tear, and in April 2021 had that tear surgically repaired. (Admin. Tr. 1031; Doc. 9-8, p. 21). His pain improved. (Admin. Tr. 1084; Doc. 9-8, p. 74) (reporting no left knee pain).

As his left knee improved, in June 2021 he experienced pain in his right knee. *Id.* An MRI revealed the impression of a mild ACL sprain, mild quadriceps and patellar tendinopathy, a small effusion and Baker's cyst, mild chondromalacia patella (softening or breakdown of the cartilage under the kneecap), fluid collection anterior to the patella and patellar tendon (possibly due to bursitis), and a likely benign enchondroma (noncancerous bone tumor) on within the medial femoral condyle. (Admin. Tr. 1083; Doc. 9-8, p. 73). Plaintiff returned to review the MRI, and reported his right knee symptoms were "moderate." (Admin. Tr. 1035; Doc. 9-8, p. 25). Plaintiff's records do not indicate that any treatment was recommended or discussed.

Then, Plaintiff's left knee pain returned. (Admin. Tr. 1034; Doc. 9-8, pp. 24) (recording no right knee pain, but maximum tenderness in Plaintiff left hamstring). X-rays taken in the office were normal, and Plaintiff was diagnosed with hamstring tendonitis and referred to physical therapy.

One month later, four months before his administrative hearing, Plaintiff began to experience pain in his left buttock. He reported that this new pain was aggravated by changing positions, daily activities, standing, and walking. (Admin. Tr. 1112; Doc. 9-8, p. 102). Plaintiff was diagnosed with left-sided sacroiliitis and was prescribed a nine-day course of prednisone. (Admin. Tr. 1113-14; Doc. 9-8, p. 103-04). One month before his administrative hearing, he was given an injection. (Admin. Tr. 1110; Doc. 9-8, p. 100). At that time, Plaintiff decided that he was "functional" and "would like to continue with observation only," but would notify his provider "if and when his symptoms are bad enough on the left to undergo surgery." *Id.*

Plaintiff testified that he currently takes Motrin for his back and follows up with his doctor every six months. (Admin. Tr. 52; Doc. 9-2, p. 53). He gets injections for his left hip. (Admin. Tr. 53; Doc. 9-2, p. 54). Plaintiff reported that his left knee "still locks up a little bit, especially if it is cold." (Admin. Tr. 57; Doc. 9-2, p. 58). His right knee is not as bad as his left. *Id.* He testified that during a typical day he alternates sitting and standing to alleviate his pain. (Admin. Tr. 59; Doc. 9-2, p. 60).

PA-C Popchak and other clinicians who treated Plaintiff at University Orthopedics Center issued "work/school status" notes that state Plaintiff "would require frequent changes of position in a workplace environment" on May 21, 2020,

October 1, 2020, and February 2, 2021. (Admin. Tr. 631, 634; Doc. 9-7, pp. 264, 267); (Admin. Tr. 1020; Doc. 9-8, p. 10). The consultative examiner, Melita Konecke, M.D., similarly assessed that Plaintiff could walk and stand for no more than thirty minutes at one time, implying that Plaintiff would need to shift positions every thirty minutes. (Admin. Tr. 817; Doc. 9-7, p. 450). However, State agency medical consultant Gregory Paul Mortimer, M.D., disagreed with Dr. Konecke's assessment that Plaintiff could not stand or walk for more than thirty minutes at a time.[48] Both State agency consultants assessed that Plaintiff could "stand and/or walk (with normal breaks) for a total of "[a]bout 6 hours in an 8-hour workday," implying that no position shifts outside of the normal break schedule would be required. (Admin. Tr. 85, 103; Doc. 9-3, pp. 9, 27).[49] The ALJ's RFC assessment falls between the ranges of work these medical sources assessed.

The ALJ addressed Plaintiff's allegation that he would need to "shift positions" in her analysis of Plaintiff's statements and in the context of Dr. Konecke and PA-C Popchak's opinions.

---

[48] (Admin. Tr. 106; Doc. 9-3, p. 30) ("The examiner states that the claimant has some limitations in walking and standing to 1/2 hour at a time. These statements of limitations are not very consistent with or well supported by the examiner's findings or the evidence in the file and are not very persuasive.").

[49] *See* Social Security Administration Program Operations Manual System ("POMS") DI 24510.005 (describing "normal breaks" as a lunch break, a morning break, and an afternoon break).

As part of her analysis of Plaintiff's statements, the ALJ wrote:

Considering the overall evidence of record, the undersigned finds that light work with postural and environmental limitations, as detailed above, adequately accommodates the effects of the claimant's impairments. The undersigned has also considered the claimant's complaints of pain and weakness interfering with his ability to walk in finding that he can stand and walk only four hours in an eight-hour workday. The claimant's history of surgical intervention for back, hip, and knee pain support these limitations.

However, medical records documenting stable pain and improved physical functioning do not support greater limitations. His treatment records confirm improvements in back and SI-joint pain. During March 2021, he reported that he was managing back pain with ibuprofen and Tylenol (Exhibit 13F/2). An August 2021 lumbar x-ray revealed a stable fusion with well placed hardware and no changes (Exhibit 15F/15). During September 2021, he continued to report good relief from his right SI joint fusion, and that injections and stretching managed discomfort at the left SI joint (Exhibit 13F/14). His physical examinations have revealed normal strength with no sign of muscle wasting, normal range of motion at the joints, and unassisted balance and gait (Exhibits 13F/4, 15; 15F/11). Office treatment records from November 2021 state that the claimant was still maintaining light activity (Exhibit 15F/1). Contrary to his testimony regarding a pending need for surgery at his left SI joint, Gregory Bailey, D.O. noted that the claimant was functional and would like to continue with observation only (Exhibit 15F/3). His physical examination showed no tenderness at the left SI joint and a negative Fortin sign. Dr. Bailey observed that he could ambulate with a normal gait down the office halls, and maintained good strength.

(Admin. Tr. 34; Doc. 9-2, p. 35).

When she evaluated Dr. Konecke's opinion, she reasoned, "[e]vidence that the claimant has sustained a normal gait without the use of an assistive device and

could sit, stand, and walk at his appointment with no signs of distress, do not support an additional limitation to standing/walking 30 min at a time." (Admin. Tr. 35; Doc. 9-2, p. 36). Regarding PA-C Popchak's October 2020 and February 2021 opinions, she observed that medical records following Plaintiff's surgical procedures,

> show improvements in the claimant's ability to lift, carry, stand, and walk. For example, treatment records from September 2019 show the claimant ambulated with a normal gait and retained full strength at the upper and lower extremities (Exhibit 6F/59). After his right SI joint fusion, the claimant denied experiencing further radicular pain and was able to stand and walk, unaided, with a normal gait (Exhibits 9F; 12F). The claimant has not exhibited signs of acute distress during his appointments, nor has he reported increased discomfort with standing, sitting, or walking or the need to frequently change positions (Exhibits 15F). Instead, the record indicates the claimant's pain symptoms have remained well managed with conservative treatment following his surgeries. Nevertheless, the undersigned has considered each of these opinions along with the claimant's treatment history in finding that he can lift and carry at the light level and stand/walk no more than four hours in a workday.

(Admin. Tr. 35-36; Doc. 9-2, pp. 36-67).

To the extent Plaintiff suggests the ALJ did not consider the evidence he relied on in his brief, we are not persuaded. The ALJ acknowledges Plaintiff's February 2019 spinal MRI, the fact that he participated in physical therapy, his reports of pain, the types of treatment Plaintiff received, Plaintiff's chiropractic records, and the opinions by PA-C Popchak and Konecke.

After reviewing the ALJ's decision, and the record, we find that substantial evidence to supports the ALJ's evaluation of Plaintiff's ability to stand and walk. The medical sources disagreed about whether Plaintiff could stand or walk for longer periods of time, and there is evidence in the record that Plaintiff's pain was well managed with stretching, over-the-counter medications, and injections. The ALJ acknowledged that Plaintiff engages in a range of activities that require him to walk and stand, including going for walks and woodworking. The ALJ also relied on Plaintiff's own report that he could walk all day. Therefore, we find that substantial evidence supports the ALJ's finding that additional limitations were not necessary, and therefore the hypothetical question posed to the VE was not deficient for failing to limit Plaintiff to occupations where he could shift positions at will.

## V.    CONCLUSION

For the reasons explained above, Plaintiff's request for relief is DENIED. The Court finds that substantial evidence supports the ALJ's decision. As such, the Commissioner's final decision is AFFIRMED. An appropriate order will be issued.

Date: February 3, 2025                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge